## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**BRANDON S. LAVERGNE (#424227), ET AL.**                **CIVIL ACTION**

**VERSUS**

**MICHAEL VAUGHN, ET AL.**                **NO. 16-400-JWD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 21, 2019.

                                                                    **RICHARD L. BOURGEOIS, JR.**
                                                                    **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BRANDON S. LAVERGNE (#424227), ET AL.　　　　　CIVIL ACTION

VERSUS

MICHAEL VAUGHN, ET AL.　　　　　　　　　　　　　NO. 16-400-JWD-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court the Motion for Summary Judgment of the remaining Defendants in this case, Bruce Dodd and Michael Vaughn (R. Doc. 78). This Motion is opposed. *See* R. Docs. 101 and 102.

*Pro se* plaintiff[1], Brandon Lavergne, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Michael Vaughn, Seth Smith, Darrell Vannoy, Leslie Dupont, Joe Jones, William Richardson, Megan Shipley, George Heard, Cindy Vannoy, Lindsey Metz, Delvin Turner and Bruce Dodd. Pursuant to prior Rulings in this case, all of the plaintiffs' claims have been dismissed except the claim that defendants Michael Vaughn and Bruce Dodd violated their constitutional rights by imposing a mail block in February of 2016. The plaintiffs' pertinent allegations as to the remaining claim are as follows:

In October of 2015, the plaintiff was notified by the visitation officer that his daughter, Bethany, was going to be removed from his visitor list unless he sent her a visitation form after she turned 15. Since, due to a no contact order, the plaintiff could not send anything to the

---

[1] James Lavergne, father of plaintiff Brandon Lavergne, was added as a plaintiff subsequent to the filing of the initial Complaint. *See* R. Docs. 16 and 19. As used herein, "plaintiff" refers to plaintiff Brandon Lavergne, "plaintiffs" refers to both Brandon and James Lavergne.

mother of his daughter (his former wife Lainey Martinez), he filed a grievance (LSP-2015-3283) which was denied.

In December of 2015, the plaintiff learned that his daughter had not been living with his former wife since 2014. Instead, she had been residing in a group home in Mississippi. On February 3, 2016, the plaintiff wrote a letter to the staff of the group home asking for permission to contact his daughter. The plaintiff's ex-wife contacted the prison regarding the letter on or about February 8, 2016. On or about February 12, 2016, in alleged retaliation for the plaintiff's filing of a prior suit, defendant Michael Vaughn, with the approval of defendant Bruce Dodd, placed the plaintiff on a "total mail block," which prohibited the plaintiff from sending or receiving any mail, including religious or legal mail. The block also prohibited the plaintiff from receiving J-PAY e-mails.

On February 16, 2016, defendant Vaughn issued a disciplinary report wherein he claimed that the plaintiff had been verbally advised in 2012 that he was not to have any contact with the Martinez family. The plaintiff asserts that he was not informed to not have any contact with the Martinez family, rather the plaintiff was told not to contact Lainey Martinez.

On February 17, 2016, the plaintiff wrote a second letter to the staff of the group home requesting written permission to contact his daughter. On the same date, defendant Vaughn issued a second disciplinary report.

The plaintiff was brought before a disciplinary board on February 19, 2016. The plaintiff requested that a copy of his February 3, 2016 letter to the group home be produced, and the board agreed. The report was sent back to defendant Vaughn in order for a copy of the letter to be produced.

On February 20, 2016, the plaintiff was brought before a disciplinary board regarding the disciplinary report issued on February 17, 2016. The plaintiff informed the board that he had not received a copy of the report, and the board deferred the hearing. On February 22, 2016, the plaintiff was brought before a new disciplinary board who found no reason for the February 3, 2016 letter to be produced and refused to allow the plaintiff to question defendant Vaughn. The plaintiff was found guilty and sentenced to 12 weeks loss of store and transfer to the Camp J management program.

On February 23, 2016, the plaintiff was brought before a disciplinary board for the February 17, 2016 disciplinary report. The plaintiff's requests for a copy of the letter, a copy of the disciplinary report, a copy of a no contact request from the group home, and to question defendant Vaughn were refused. The plaintiff was found guilty and was again sentenced to the Camp J management program.

The plaintiff appealed the disciplinary convictions, and his appeals were rejected by based upon false information. The plaintiff then filed a grievance on February 25, 2016 concerning the mail block. On April 25, 2016, a First Step response was issued denying the plaintiff's request for relief. Plaintiff's request for relief was also denied at the Second Step.

As a result of the mail block, the prison rejected three certified packages from the plaintiff's family that consisted of legal documents needed for this suit, and patent information. On February 25, 2016, a certified package of family photos, sent by plaintiff James Lavergne, was signed for by Delvin Turner but was never delivered to the plaintiff or returned to his family. The plaintiff also had 30 letters that he attempted to send out disappear, and 40 letters returned to him unsent.

Defendants Vaughn and Dodd now move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, and the following exhibits: Exhibit 1 – LSP Investigation Case # AIS-12-I-0807; Exhibit 2 - LSP Investigation Case # AIS-13-G-0587; Exhibit 3 - LSP Investigation Case # AIS-13-G-0603; Exhibit 4 - LSP Investigation Case # AIS-14-I-0810; Exhibit 5 - LSP Investigation Case # AIS-14-L-1077; Exhibit 6 - LSP Investigation Case # AIS-14-L-1094; Exhibit 7 - LSP Investigation Case # AIS-15-A-0018; Exhibit 8 - LSP Investigation Case # AIS-16-B-0165; Exhibit 9 - LSP Investigation Case # AIS-16-B-0207; Exhibit 10 - LSP Investigation Case # AIS-16-D-0549; Exhibit 11 - Letter dated 7-3-2013 by Brandon Lavergne; Exhibit 12 - Mail Block Authorization dated 9/23/2014; Exhibit 13 - LSP Directive No. 16.002 – Offender Mail, Packages, & Publications; Exhibit 14 - Louisiana Dept. of Public Safety and Corrections Department Regulation No. C-02-009; Exhibit 15 - Letter from Brandon Lavergne to Ashley Say; Exhibit 16 – Inmate Brandon Lavergne J-Pay Message Index From January 2016 Through November 2018; Exhibit 17 - Inmate Brandon Lavergne Securus Telephone Call Index From January 2016 Through November 2018; Exhibit 18 - Email From LSP Col. Stewart Hawkins to Lt. Cindy Vannoy on July 27, 2017; Exhibit 19 - Inmate Brandon Lavergne LSP Visitation Records From January 2016 Through November 2018; and Exhibit 20 - Affidavit of LSP Col. Michael Vaughn.

The plaintiffs oppose the Motion relying upon the pleadings, Statements of Undisputed Facts, and the following exhibits:  Exhibit 1 – mail blocked before February 16, 2016; Exhibit 2 – disciplinary report history; Exhibit 3 – Defendants interrogatory answers; Exhibit 4 – religious mail blocked; Exhibit 5 – legal mail blocked; Exhibit 6 – educational mail blocked; Exhibit 7 – February 8, 2016 Sunbelt mail block; Exhibit 8 – returned legal book; Exhibit 9 – Sunbelt home page; Exhibit 10 – February 3 letter to Sunbelt; Exhibit 11 – February 17 letter to Sunbelt;

Exhibit 12 – legal mail to Lainey September 14; Exhibit 13 – Letter to Braden and report December 2014; Exhibit 14 – ARP LSP 2016-0711 and report; Exhibit 15 – ARP report; Exhibit 16– mail block orders; Exhibit 17 – disciplinary report and investigative report; Exhibit 18 – prison rules 16.002; Exhibit 19 – dept. rule C-02-009; Exhibit 20 – disciplinary rule book; Exhibit 21 – old visiting list; Exhibit 22 – Bethany's removal from visiting list; Exhibit 23 – Ashley Says letter and report; Exhibit 24 – ARP LSP 2015-1063; Exhibit 25 – interrogatories to Michael Vaughn; Exhibit 26 – emails between Vaughn and Lainey; Exhibit 27 – Returning Hearts 2015; Exhibit 28 – Returning Hearts 2018; Exhibit 29 – seized James Lavergne mail; Exhibit 30 – stolen mail receipts; Exhibit 31 – 2012 Kennedy report; Exhibit 33 – movement sheet; Exhibit 34 – employee roster; Exhibit 35 – emailing lifting mail block; Exhibit 36 – list of missing mail; Exhibit 37 – new visiting list; and Exhibit 38 – photos from James Lavergne.

     Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record that demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc*., *supra*, 477 U.S. at 248. However, whereas summary judgment is appropriate when there is no genuine disputed issue as to any

material fact, and the moving party is able to show that he is entitled to judgment as a matter of law, Fed. R. Civ. P. 56, the moving party always bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). This is done by informing the Court of the basis for the motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. The nonmoving party is not required to respond to the motion until the movant has made the required showing in support thereof. *Id*. It is only after the movant has carried his burden of proof that the burden shifts to the non-movant to show that the entry of summary judgment is not appropriate. *See Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000). In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In response to Plaintiff's allegations, the defendants assert that they are entitled to qualified immunity in connection with the plaintiffs' claims. Specifically, the defendants contend that the plaintiffs' allegations are insufficient to establish that they violated the plaintiffs' constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the

plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[2]

Undertaking the qualified immunity analysis with respect to the plaintiffs' claims, the Court concludes that the defendants' Motion for Summary Judgment should be granted and that the defendants are entitled to qualified immunity in connection with the claim remaining before the Court.

In summary, the remaining claim before this Court is in connection with the plaintiff's complaint that a mail block was imposed in February of 2016 that barred him from sending or receiving mail. It appears that, on February 16, 2016, a mail block restricting all outgoing and ingoing mail for the plaintiff, with the exception of legal mail, was prepared by defendant

---

[2] The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

Vaughn, with the approval of defendant Dodd. The block was instituted due to the plaintiff's attempt to circumvent a non-contact order by mailing a letter to his biological[3] minor daughter using false information for the sender's address on the envelope. *See* R. Docs. 78-11, p. 24; 78-11, p. 42; and 78-23.

It is well-recognized that inmates have a First Amendment right both to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401 (1989). Notwithstanding, this right is not absolute, and it is clear that it does not preclude prison officials from examining mail to ensure that it does not contain contraband or address matters, such as escape plans or other illegal activity, that may impact upon the security of the prison environment. *See Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993).

Outgoing mail, to some degree, is distinguished from incoming mail in this context because courts have recognized a heightened security risk with regard to incoming mail because of the possibility of the introduction of contraband into the prison. *See Thornburgh v. Abbott*, *supra*, 490 U.S. at 413. Thus, the Fifth Circuit has concluded that outgoing mail should not be arbitrarily censored. *Brewer v. Wilkinson*, *supra*, 3 F.3d at 826. However, restrictions on outgoing mail that are justified by reasonable and rational penological objectives are not prohibited. *See Turner v. Safely*, 482 U.S. 78 (1987) (setting forth a four-part fact-based analysis for the evaluation of prison regulations and restrictions that impose constitutional limitations upon prisoners). *See also Brewer v. Wilkinson*, *supra*, 3 F.3d at 824 (suggesting that "Turner's 'legitimate penological interest' test would also be applied to outgoing mail"). *See also Samford v. Dretke*, 562 F.3d 674 (5th Cir. 2009) (same). Thus, prison regulations that prohibit inmates

---

[3] With regards to Bethany Martinez, it appears that the plaintiff's parental rights were terminated in January of 2010, and Bethany was adopted by Jed Martinez who is the husband of Bethany's mother, Lainey Martinez.

from sending correspondence to the victims of their offenses or to the families of their victims have been found to be supportable. *See*, *e.g*., LSP Directive No. 16.002 (R. Doc. 78-16, p. 4).

In addition, restrictions placed on an inmate's ability to send mail to persons who have indicated a desire not to receive correspondence are routinely upheld. *See*, *e.g*., *Jones v. Diamond*, 594 F.2d 997, 1014 (5th Cir. 1979) (validating the use of a negative mail list and stating that "jail officials may employ a 'negative mail list' to eliminate any prisoner correspondence with those on the outside who affirmatively indicate that they do not wish to receive correspondence from a particular prisoner"). *See also Samford v. Dretke*, 562 F.3d 674 (5th Cir. 2009) and cases cited therein (upholding a mail block in the form of a "negative mail list," even without a specific request for non-contact, where the restriction placed upon the inmate's ability to send mail was targeted at only specifically named individuals and where a sufficient factual basis was clear on the record because the proscribed individuals were young family members who had witnessed his violent criminal conduct). The question in this case is whether the broader restriction that was placed upon Plaintiff's ingoing and outgoing mail in this case may be seen to pass constitutional muster.

Although the issue is a close one, the Court ultimately concludes that the plaintiffs have failed to clearly establish the violation of their constitutional rights in the instant case. The supporting documentation and affidavit of defendant Vaughn reflect that the plaintiff has followed a long and somewhat conflictual path in connection with his ingoing and outgoing correspondence and that measures were undertaken by prison personnel prior to the imposition of the subject mail block to curb the plaintiff's attempts to address correspondence to persons who had indicated that they did not want to receive correspondence from him, and from

receiving mail including photographs of minor children whose parents had requested the plaintiff not have such photographs in his possession.

In September of 2012, in accordance with an explicit request from Ms. Patti Turner (the mother of the plaintiff's son Braden Turner), the plaintiff was instructed to refrain from communicating with Ms. Turner or sending correspondence to Ms. Turner's address.  Thereafter, on July 3, 2013, pursuant to an explicit request from the plaintiff's ex-wife, Lainey Martinez, the plaintiff was instructed to refrain from sending mail to Ms. Martinez, to Ms. Martinez' minor daughter Bethany, or to any other members of Ms. Martinez' extended family.  In connection with this second request, a 60-day mail watch was implemented, pursuant to which the plaintiff's mail was subjected to greater scrutiny than normal but not to any direct limitation. Notwithstanding, it appears that on that same date, the plaintiff attempted to circumvent the non-contact directive and addressed a letter to Ms. Martinez, which letter was intercepted by prison personnel on July 9, 2013 and which letter resulted in a disciplinary charge issued against the plaintiff for "Aggravated Disobedience."

Thereafter, on September 23, 2014, prison officials learned of another attempt by the plaintiff to circumvent his non-contact directives relative to Ms. Martinez.  Specifically, prison officials were advised that Ms. Martinez' mother had received an item of correspondence addressed to Ms. Martinez at the mother's address.  Further investigation revealed that this correspondence had actually been sent circuitously, first from the plaintiff to his family members with instructions to forward it to Ms. Martinez, and second from the plaintiff's family members to Ms. Martinez in an attempt to circumvent the prior instruction relative to non-contact.  This item of correspondence resulted in a second disciplinary charge for "Aggravated Disobedience" and also in the imposition of a 180-day mail watch on the plaintiff's mail.

On or about December 16, 2014, former Warden Burl Cain was apparently personally contacted by Joyce Shunick, the mother of the plaintiff's murder victim, who advised Cain of correspondence that she had either received or been advised of that was addressed by the plaintiff to a close friend of her deceased daughter. Based upon this communication from Ms. Shunick and the likely distress caused by the referenced correspondence, and in light of the above-related previous events, Cain contacted Deputy Warden Leslie Dupont with instructions that a mail block be placed upon the plaintiff's mail. Accordingly, pursuant to Cain's instructions, defendant Vaughn prepared the mail block Memorandum and, upon approval by Dupont, forwarded it to the LSP mail room.

During that same month of December 2014, the plaintiff undertook additional conduct that was in violation of prior explicit instructions relative to non-contact. Specifically, on December 22, 2014, prison personnel intercepted an item of correspondence addressed by the plaintiff to the address of Ms. Patti Turner, which correspondence included a Christmas card intended for the plaintiff's minor son Braden Turner as well as copies of photographs taken of family members. As indicated above, the plaintiff had been instructed not to send correspondence to Ms. Turner or to her address. As a result of the referenced correspondence, the petitioner was issued a third disciplinary charge for "Aggravated Disobedience."

On January 6, 2015, prison personnel intercepted an item of correspondence from Ms. Tiffany Gilcrease to the plaintiff, containing photographs of a minor girl and boy. Defendant Vaughn contacted Ms. Turner who advised that she did not want the plaintiff to contact her or her family, or to receive photographs of her son Braden Turner. With the authorization of Deputy Warden Dupont, defendant Vaughn contacted Ms. Gilcrease and advised her to cease sending photographs of Braden Turner.

The next month, on February 8, 2016, Ms. Lainey Martinez contacted LSP Investigative Services regarding correspondence sent by the plaintiff to her minor daughter Bethany Martinez at a private Christian school in Mississippi. False information was used on the sender's address. On the same date, defendant Vaughn drafted a mail watch memorandum blocking mail to the Sunbelt Christian Youth Ranch in Mississippi.

On February 16, 2016, the plaintiff was instructed by defendant Vaughn to refrain from all forms of communication with any member of the Martinez, Turner and Vasseur families and to refrain from writing to the school in Mississippi, and a disciplinary charge was issued. On the same date, defendant Vaughn, drafted a mail block memorandum, signed by defendant Dodd, that restricted all outgoing mail for the plaintiff with the exception of legal mail.

On February 17, 2016, correspondence from the plaintiff to the Sunbelt Christian School was intercepted. Therein, the plaintiff references that he was given verbal instruction to cease all contact with the school. The plaintiff was issued a disciplinary charged for Aggravated Disobedience.

Weeks later, on March 1, 2016, correspondence from plaintiff James Lavergne was intercepted. The correspondence had been sent via certified mail with an address label with the logo and name for the American Center for Law & Justice. The correspondence contained photographs of Braden Turner and Bethany Martinez, the minor children of Ms. Pattie Turner and Ms. Lainey Martinez. The use of the address label and certified mail service was believed by defendant Vaughn to be part of an effort to disguise the mail as legal mail to circumvent the plaintiff's mail restrictions. On March 16, 2016, defendant Vaughn, with the authorization of defendant Dodd, drafted a mail block memorandum restricting all incoming and outgoing mail

for the plaintiff with the exception of legal mail. On July 27, 2017, the restrictions were removed.

In *Turner v. Safely*, *supra*, the United States Supreme Court concluded that four factors are relevant in deciding whether a prison regulation or restriction that impinges upon an inmate's constitutional rights may withstand a constitutional challenge: (1) whether the regulation or restriction has a "valid, rational connection" to a legitimate governmental interest; (2) whether alternative means are open to the inmate to exercise the asserted right; (3) the impact an accommodation of the right would have on guards and inmates and prison resources; and (4) whether there are ready alternatives that could fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *See id*. at 89-91. *See also Samford v. Dretke*, *supra*, 562 at 679. Deference should be afforded to prison administrators' decisions, especially when those decisions deal with issues of prison safety and security. *Turner v. Safety*, *supra*, 482 U.S. at 89. *See also Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004) ("the Court is equally cognizant of the inherent demands of institutional correction, the deference owed to prison administrators, and the subjugation of individual liberty that lawful incarceration necessarily entails"). Rationality is the "controlling factor" in conducting the Turner inquiry "and a court need not weigh each factor equally." *Mayfield v. Texas Dep't of Criminal Justice*, 529 F.3d 599, 607 (5th Cir. 2008).

In addressing the first prong of the *Turner* analysis, the defendants invoke the legitimate governmental interest in protecting the general public and specific individuals from harassment and unwanted contact by inmates. This governmental interest has often been invoked by prison administrators in seeking to justify the imposition of restrictions upon the rights of inmates to send correspondence. *See*, *e.g*., *Lavergne v. Martinez*, 2013 WL 3803975 (M.D. La. July 19,

2013) and cases cited therein (denying injunctive relief to plaintiff who sought to be allowed to correspond with his minor daughter notwithstanding the mother's contrary wish). Thus, the defendants make reference to the lesser attempts to limit the plaintiff's communication with certain individuals at the individuals' requests, the plaintiff's several attempts to circumvent the limitations sought to be imposed, and to resulting disciplinary charges levied against the plaintiff in such instances.

The Court accepts the defendants' rationale in this regard and agrees that there is a rational relationship between the legitimate governmental interest invoked and the actions taken by the defendants to meet the valid penological objective. While the actions taken by the defendants in response may have been over-broad in scope, the Court further finds, as discussed hereafter, that other factors tempered the effect of the defendants' actions and effectively limited any deleterious effect thereof.

The second aspect of the *Turner* analysis asks whether alternative means were available to plaintiff to accommodate his First Amendment rights. In addressing this inquiry, the Court finds that alternative means of communication were in fact available to the plaintiff. Specifically, notwithstanding the referenced mail block, the plaintiff was still allowed to send privileged legal mail. Further, his visitation, telephone, and email rights (limited though they may have been in light of his classification level) were not impacted by the mail limitations placed upon the plaintiff. The records reflect that during the period the mail block was in effect, the plaintiff had approximately 23 visitations, sent 655 J-pay messages, and made 629 telephone calls. As such, the plaintiff was not entirely prevented from communicating with persons outside of the prison, including plaintiff James Lavergne. In addition, it has been recognized that an acceptable alternative in the event of restrictions being placed upon an inmate's ability to send

mail to certain individuals is the ability to indirectly communicate through the oral relay and exchange of information by and through persons who are not so restricted. *See Samford v. Dretke*, *supra* (where the Court noted that the mother of plaintiff's children could "relay" oral messages from the children when she visited and that "[a]lternatives … need not be ideal, however; they need only be available," citing *Overton v. Bazzetta*, 539 U.S. 126, 135 (2003)).

Finally, the Court notes that the restriction placed upon the plaintiff's mail was not apparently perpetual in duration. Although the mail block Memorandum did not designate a specific term or duration, the restriction was imposed, due to the plaintiff's failure to comply with previous directives not to contact specified individuals. Thus, as an incentive to encourage the plaintiff to improve his behavior, the mail block was likely not intended to be permanent but was subject to being modified upon his exhibiting a willingness to comply with prison rules. *Cf.*, *Hill v. Terrell*, 846 F. Supp. 2d 488 (W.D. N.C. 2012) (upholding the imposition of periods of censorship imposed upon plaintiff's mail after he repeatedly sent mail to people outside the prison who did not want such communication and noting that the plaintiff was advised, in response to his complaints, that he could request the lifting of the restriction by showing improvement in his behavior "for a reasonable period of time"). The mail block ended on July 27, 2017. Thus, the apparent limited effective duration of the restriction on the plaintiff's mail may also be seen as leaving alternatives open to him to exercise his First Amendment rights upon the cessation thereof.

With regard to the third *Turner* inquiry, *i.e.*, the potential impact upon the institution, guards, inmates and general public if the plaintiff's rights were fully accommodated, the Court finds that this inquiry favors the defendants as well, albeit only minimally. Specifically, the record reflects that time, effort and prison resources were necessarily expended in investigating

and scrutinizing the plaintiff's mail after he repeatedly engaged in conduct that was intended to circumvent verbal instructions and prison directives. Whereas the Louisiana State Penitentiary maintains a mail room that has as its responsibility the review and inspection of inmate mail, it seems likely that allowing the plaintiff the unrestricted right to send mail without the imposed limitations would have imposed a burden on prison resources and that limiting the plaintiff's rights in this regard ameliorated that burden to some degree.

Finally, *Turner* inquires whether there are ready alternatives that would have accommodated the right asserted by the plaintiff at a *de minimis* cost to valid penological objectives. In this regard, the existence of obvious easy alternatives may be evidence that the restrictions imposed upon the inmate are not reasonable but are instead an "exaggerated response" to prison concerns. *Id.*, 482 at at 90. *Turner*, however, does not require that a "least restrictive alternative" be discovered and implemented, nor do prison officials have to "set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Id*. Rather, the burden is generally seen to be upon the plaintiff to identify a reasonable ready alternative, and he has not done so in the instant case. *See Victoria v. Larpenter*, 369 F.3d 475, 484 (5th Cir. 2004) (stating that under *Turner's* fourth factor, "an inmate must present evidence of a ready alternative that fully accommodates a prisoner's rights at de minimis cost to valid penological interests"). To the contrary, it appears that prison officials in the instant case had, during the years leading up to the imposition of the subject mail block verbally instructed the plaintiff to refrain from sending mail to persons who requested no contact, imposed mail watches and lesser mail blocks upon the plaintiff of varying durations, and charged him with disciplinary violations upon his non-compliance with their directives.

Based on the foregoing, it does not appear that the defendants acted entirely unreasonably in this case in imposing a mail block that appears to have been of limited duration, that preserved the plaintiff's ability to communicate by other means, and allowed him to send and receive privileged legal mail.

Notwithstanding, although the Court expresses reservations about the appropriateness of the imposition of a blanket restriction of extended duration upon the sending and receiving of general mail and although the Court views with great seriousness the exercise of inmates' First Amendment rights, the Court's research has not uncovered – and the plaintiffs have not cited – any controlling legal authority that categorically forbids the mail block imposed in the instant case.  *Cf.*, *Hill v. Terrell*, 846 F. Supp. 2d 488 (W.D. N.C. 2012) (upholding defendants' action in imposing periods of censorship on the plaintiff's outgoing mail after he sent correspondence to persons who requested non-contact); *Akers v. Watts*, 740 F. Supp. 2d 83 (D.D.C. 2010) (addressing Bureau of Prisons regulations that authorize the imposition of "restricted general correspondence status" upon federal inmates under certain circumstances).  *See also Procunier v. Martinez*, 416 U.S. 396, 412 n. 12 (1974) ("We need not and do not address in this case the validity of a temporary prohibition of an inmate's personal correspondence as a disciplinary sanction for violation of prison rules"); *Gilliam v. Quinlan*, 608 F. Supp. 823, 837 (S.D. N.Y. 1985) (expressing reservations about the imposition of a punitive mail prohibition but finding that the defendants were entitled to qualified immunity because they were "operat[ing] in an area in which the law was not charted clearly").  Accordingly, the Court believes that the defendants are entitled to qualified immunity in this case and that summary judgment should be granted in their favor in connection with this issue.

Turning to the plaintiff's claim that his constitutional right to procedural due process was violated in connection with the imposition of the subject "mail block," because there was no hearing prior to the imposition thereof, the Court concludes that this claim is without merit. Specifically, the plaintiff has not disputed that he was provided with notice that the restriction was being imposed and of the reason for its imposition. He thereafter had the ability to challenge the actions of prison officials through the filing of an administrative grievance. The essential hallmarks of procedural due process are notice of the imposition of a sanction or restriction and an opportunity to be heard, and these appear to have been provided. Further, the operative prison regulation does not require a hearing prior to the imposition of mail restrictions. Finally, to the extent that the plaintiff complains that the prison's rules and regulations were not followed in connection with the mail block, this is clearly not a claim of constitutional dimension. *See*, *e.g.*, *Samford v. Dretke*, *supra*, 562 F.3d at 681, and cases cited therein. Accordingly, this aspect of the plaintiff's claim should also be denied.

## **RECOMMENDATION**

It is recommended that the Motion for Summary Judgment of defendants Michael Vaughn and Bruce Dodd (R. Doc. 78), be granted, dismissing the plaintiffs' claims asserted against them, with prejudice. It is further recommended that the plaintiff's "Counter Motion for Summary Judgment" (R. Doc. 102) be denied, and the pending Motions in Limine (R. Docs. 75, 76) and Motion for Summons (R. Doc. 104) be denied as moot, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on March 21, 2019.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**